1 United States. Defendants derive substantial revenue from goods used and services rendered in California and across the United States. Defendants deliberately focus their marketing and sales efforts, including of the Infringing Programs, in California, both because it is the 4th largest economy in the world and largest in the U.S. (at approximately $4.1 trillion) and also because Los Angeles and San Francisco are home to one of its largest South Asian target customer demographics in the United States, a U.S. population of approximately 4.3 million people with Indians being the largest group (with 2 of the 5 top U.S. metropolitan areas for both South Asians more generally and Indians more specifically being Los Angeles and San Francisco), and by some measures the fastest growing major group in the United States nearly doubling in just over 10 years.[16]

31. Defendants expected their relevant acts alleged herein, alone and in concert, to have consequences in California and across the United States. Defendants also knew that APM had its principal place of business in California, and continued their course of U.S. infringement despite APM's repeated notice of infringement and two-way discussions with ZEE's top person(s) in its legal department. Defendants also specifically targeted California and United States consumers and had access to the physical and/or IP addresses of the subscribers and viewers of the Infringing Programs that Defendants distributed, thereby explicitly confirming that the infringing material was being distributed into California and across the United States. Defendants took specific steps to make sure the geolocations of California and United States IP addresses were available to the Zee5 App, Zee5 Website and other channels by which the Infringing Works were made available to the United States and California consumer.

---

[16] *E.g.* https://saalt.org/wp-content/uploads/2016/01/Demographic-Snapshot-updated_Dec-2015.pdf.

1  32.  Defendants have benefitted substantially from the pervasive and willful exploitation of APM's Infringed Works within California and across the United States, deriving substantial revenue from its infringing acts in the State of California and across the United States and this District, including from customers enticed into streaming and watching Defendants' content featuring the Infringed Works.

## FURTHER ALLEGATIONS

33.  For over forty (40) years, APM has been an integral part of the production music industry and, at this time, is one of the world's leading production music library companies. APM owns and/or controls more than 1.2 million recordings made up of more than 390,000 unique musical compositions available to license, making its collection the largest, deepest, and broadest in the industry. In fact, APM has over 300 diverse libraries including KPM Music, Sonoton, Cezame, and Kosinus, offering every imaginable music genre to help a client find that perfect track for the client's production.

34.  APM is the exclusive licensee of all rights under U.S. copyright law asserted herein as violated by the Infringing Works.

35.  Consistent with the above allegations, **Exhibit A** has been incorporated hereto and provides a sample list of Infringed Works, including (i) title, (ii) U.S. copyright registration number for the album or compilation that includes the respective title, and titles of specific Infringing Programs containing the respective Infringed Work that was illegally synchronized, copied, performed and distributed by Defendants. APM is the exclusive licensee and agent of all U.S. copyright interests violated by the Infringing Works as heretofore alleged. None of the Defendants obtained a license for the use of the Infringed Works in the Infringing Programs from APM nor, on information and belief and after further investigation, from any of the original publishers, sub-publishers or, or any other actual purported rightsholders for their U.S. infringements.

36. The Infringed Works include a variety of production music works in various genres, including at least one thousand two hundred and twelve (1,212) different original musical works that are part of more than five hundred (500) different copyright registrations, and each musical composition or sound recording constitutes a separate work for purposes of the U.S. Copyright Act.

37. As confirmed by a sample of the Infringing Programs, a significant portion of the Infringing Programs included on Defendants' U.S. social media and other channels consist of clips of episodes, whose full length counterparts – including the portions featuring the Infringed Works – appear and are available for streaming on the Zee5 App and Zee5 Website.

38. On information and belief, Defendants are one of the world's largest media empires whose content includes myriad movies, news shows, sitcoms, drama series, reality shows, cooking shows, game shows, and other types of content. On information and belief, Defendants created or commissioned the creation of each of the Infringing Programs and are authors of those infringing derivative works.

39. Defendants' Infringing Works and their uses in and in connection with the U.S. including through various television programming, and in online marketing uploaded to YouTube, Facebook, Twitter, and Instagram was done with the express purpose and intent to increase Defendants' U.S. viewership, increase the usage of the Zee5 App and Zee5 Website, market to a wider audience, and increase Defendants' revenue. As a result, on information and belief, Defendants have derived significant revenue and profits as a direct result of their infringing use of the Infringed Works through exploitation of the Infringing Works on each infringing platform.

40. Defendants certainly had access to APM's Infringed Works, but had no authorization or license to make use of said Infringed Works anywhere in the world, let alone in or in connection with the United States exploitation of the Infringing Works as alleged herein.

41.　Through its diligent investigation shortly before sending a demand letter in February 2025, APM discovered that Defendant exploited the Infringed Works through its myriad television shows and online streaming, videos, promotions and advertising made available to viewers on YouTube, Facebook, Twitter, Instagram, and broadcasts and streaming of the Infringing Works in or into the United States.

42.　After discovering the infringement, and before even contacting Defendants, APM conducted a thorough and diligent search for a license between APM and Defendants for Defendants' uses of the Infringed Works but was unable to locate any licenses for Defendants. This diligence search further included checking with third parties, including the original publishers, to confirm no purported authorization to Defendants – and confirmed that none had been given for the U.S., and indeed none had even purportedly been given anywhere in the world.

43.　Thus, on February 25, 2025, APM contacted ZEE in writing demanding that it provide any proof of license or authorization for the APM Infringed Works and/or otherwise respond to the allegations.

44.　APM afforded Defendants ample opportunity to show a valid license, or even purported grant, license or authorization from any party, but Defendants have failed to do so to date despite multiple responsive communications received from high-level personnel at Defendants.

45.　Despite sporadic responses from Defendants' in-house counsel, these responses were never substantive and only made unmet assurances that the matter was being looked into. APM's further review of the unauthorized uses included searching for any licenses relating to the production houses, and license checks with certain musical societies, all attempting to determine any which way Defendants could have possibly believed their use was facially authorized – and finding none.

46.　Even after receiving multiple written notices of infringement and cease and desist demands from APM, Defendants continue to distribute the Infringed Works throughout California and the United States.

47. Defendants did not provide any requisite grants, licenses or other purported authorization for the use of any (let alone all) of the one thousand two hundred and twelve (1,212) Infringed Works and, without license or authorization at any relevant time, have used and continued to infringe those works with public performances on television and on the internet as alleged in this Complaint, including the Zee5 App, the Zee5 Website, and YouTube, Facebook, Twitter, and Instagram.

48. The Infringed Works' qualitative and quantitative similarities of the songs used in the Infringing Works are identical in this instance because Defendants' use of the Infringed Works are direct copies. APM has saved recordings of each of the uses of the Infringed Works in these Infringing Works and will produce them in discovery or upon request but are too voluminous to reasonably attach to this Complaint. To be clear, however, the videos contain direct copies of the Infringed Works, and direct and immediate access to evidence of each Infringed Work was given to Defendants as part of APM's multiple demands, as was the dozens of names of each production house involved with APM in the Infringing Programs that APM was able to uncover through its investigation, giving Defendants all the information necessary and available from APM for Defendants to promptly take down and remove the Infringing Programs from the various platforms through which the U.S. copyright infringement is ongoing.

49. APM brings this action to vindicate its rights for Defendants' infringement of APM's Infringed Works, to recover damages and infringers' profits, and requests that the Court grant the maximum award of statutory damages for copyright infringement. In light of Defendants' blatant and willful copyright infringement, anything less than the maximum statutory award of $150,000 per infringed work qualifying for statutory damages would not deter future infringement and adequately compensate APM. While given an opportunity to explain its actions or any mitigating circumstances, Defendants have refused to substantively respond or dialogue regarding the alleged infringement, or remove the infringing content, and

1  instead have continued the blatant U.S. infringement without regard to their
2  violations.

## COUNT I

## COPYRIGHT INFRINGEMENT

### (Against Defendants)

50. APM incorporates the allegations set forth in all Paragraphs of this Complaint as if fully set forth herein.

51. APM is the exclusive licensee and licensing agent of all the United States exclusive copyright interests asserted herein in the Infringed Works, including those asserted under *inter alia* 17 U.S.C. § 106 and 602.

52. Each of the Infringed Works have been duly registered with the U.S. Copyright Office. Each of the Infringed Works is an original work of authorship and constitutes copyrightable subject matter as defined by 17 U.S.C. § 102.

53. Without APM's authorization, license, or consent, Defendants willfully exploited the Infringed Works as alleged herein, violating one or more of APM's exclusive U.S. copyright interests through actions taken in connection with the Infringing Programs, including in connection with online postings to YouTube, Facebook, Twitter, and Instagram, U.S. television airings and broadcasts, the Zee5 App, the Zee5 Website, and by engaging in the acts alleged in this Complaint.

54. Defendant's unauthorized U.S. reproduction, distribution, public performance, importation, U.S. synchronization, and/or display, or U.S. licensing thereof, of the Infringed Works infringes APM's exclusive rights in violation of 17 U.S.C. § 101, *et seq.* Defendants' activities as alleged in this Complaint violate APM's rights in the Infringing Works, including without limit its distribution rights, display rights, streaming and digital transmission rights, sampling and derivative works rights, and other exclusive copyright rights.

55. Defendants have every ability and control to remove the Infringing Programs and/or the portions of the Infringing Programs making use of the Infringed

1 Works, including since the notice alleged herein, but have willfully refused to do so, resulting in ongoing U.S. infringement including through the various channels alleged herein.

56. Given the breadth of infringement in the Infringing Programs, and above and beyond any information ZEE was able to provide, APM in its pre-litigation discussions with Defendants reviewed records for any potential licenses, evaluated ZEE's related content providers, and further reviewed to be sure to identify any license or authorization that ZEE might believe applied, but no license or use applicable to any of the Infringing Programs (or applicable to any APM content period) has been identified and the use is indeed unauthorized. To be clear, ZEE failed to provide a single example of a use of APM's content being authorized or licensed for use in any way, and thus every asserted Infringing Program during the pre-suit notice discussions is included in the Infringing Programs alleged herein, but investigation is ongoing and <u>Exhibit A</u> is based on pre-suit investigation without any aid, assistance or discovery from Defendants and is thus non-exhaustive with APM alleging infringement of every registered work in its libraries that Defendants used without authorization.

57. Each and every Defendant knew and had reason to know of the infringing activity in the Infringing Works and intentionally induced, materially contributed to and encouraged that infringing activity, including by the acts alleged in this Complaint.

58. At all relevant times, Defendants' conduct has been willful, and with total disregard for APM's rights. Defendants had knowledge and understanding of the straightforward licensing procedures for the Infringed Works the necessity of which was readily disclosed by APM, but exploited the Infringed Works across thousands of works and videos, over the course of several years without obtaining the necessary licenses from APM.

59. The Infringed Works have been viewed upwards of as many as billions of times over the years, and, on information and belief, a significant number of those views have been in the United States to obtain and/or expand U.S. viewership, increase usership related to the Zee5 App and Website, to obtain advertising revenue, and other benefits, including as alleged in the Complaint.

60. APM has been irreparably harmed and suffered actual damages, including lost profits and licensing fees, as a direct result of Defendants' infringing conduct.

61. APM is entitled to damages and Defendants' profits in an amount to be proven at trial, including pursuant to 17 U.S.C. § 504(b).

62. Alternatively in whole or part, and at APM's election, APM is entitled to recover up to $150,000 in statutory damages per work infringed.

63. APM has incurred attorneys' fees and costs as a direct result of Defendants' infringement, which are recoverable and should be awarded pursuant to 17 U.S.C. § 505.

64. Defendants' conduct is causing great damage to APM, which full damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, APM will suffer irreparable injury, for which APM is without adequate remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502, prohibiting the continued infringement of the Infringed Works, and an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing works, including the Infringing Programs.

## COUNT II
## VICARIOUS COPYRIGHT INFRINGEMENT
**(Against Defendant ZEE)**

65. APM incorporates the allegations set forth in all Paragraphs of this Complaint as if fully set forth herein.

66. On information and belief, ZEE is a parent company of Z5X and/or other subsidiaries involved in making, uploading, and publishing of the Infringing Videos instead of ZEE or ZX5 themselves.

67. On information and belief, Z5X is a wholly owned subsidiary of ZEE.

68. On information and belief, ATUL is a wholly owned subsidiary, either directly or indirectly, of ZEE.

69. On information and belief, ZEE dominates the management of Z5X and ATUL.

70. On information and belief, ZEE and Z5X set up the Zee5 App, Zee5 Website, and Zee Social Media Channels for access in the United States for the purpose of driving sales including United States sales of subscriptions and viewership to ZEE content for the direct financial benefit of ZEE and Z5X. As noted above, the Infringing Works and the platforms they were made to specifically target the United States, including featuring the language choice of English, geo-location-based suggestions such as "Top Rated TV Shows | USA," and acceptance of payment in United States dollars for the services. Infringing Works and the Zee5 App, Zee5 Website, and Zee Social Media Channels were intended to and did drive both substantial U.S. viewership of ZEE's Infringing Works, and substantial resulting sales of ZEE products in the United States such as subscription to the Zee5 App, Zee5 Website, and ZEE based television subscriptions, which revenues were paid up to ZEE.

71. On information and belief, ZEE directed and coordinated with ATUL and set up the U.S. television airings and broadcasts of the Infringing Works into the United States for the purpose of driving sales including United States sales of subscriptions to the broadcast channels and advertisement revenue for advertisements featured alongside Infringing Works. Thus, the airing and broadcast of the Infringing Works led to the direct financial benefit of ZEE. As noted above, the Infringing Works and the U.S. television airings and broadcasts thereof were made to specifically target

1 the United States. The Infringing Works and the U.S. television airings and broadcasts thereof were intended to and did drive both substantial U.S. viewership of ZEE's Infringing Works, and substantial revenue for ZEE deriving from the United States.

72. On information and belief, at all relevant times, ZEE had the right and ability to supervise and/or control the infringing conduct of its subsidiaries, Z5X, ATUL, and other subsidiaries, including due to the parent-subsidiary relationship between the companies, but it has failed to exercise such supervision and/or control. Rather, ZEE, Z5X, and ATUL directly benefitted from this arrangement and from their failure to exercise proper controls to avoid such infringement. The U.S. works were imported and/or reproduced in the U.S. for the express purpose and use of providing these various channels Infringing Works on U.S. servers.

73. As a direct and proximate result of such acts and failures by ZEE, its subsidiaries Z5X and ATUL have infringed APM's Infringed Works as set forth above.

74. On information and belief, at all relevant times, ZEE derived substantial financial benefit from infringement of APM's Infringed Works by Z5X, ATUL, and other subsidiaries.

75. ZEE's above-mentioned acts of infringement have been willful, intentional, and purposeful in disregard of, and with indifference to, APM's rights.

76. ZEE's conduct, as alleged, constitutes vicarious infringement of APM's copyrights and exclusive rights in violation of 17 U.S.C. §§ 106, 115, and 501.

77. Further, as a direct and proximate cause of ZEE's vicarious infringement of APM's Infringed Works, FPM is entitled to damages pursuant to 17 U.S.C. § 504(b) for each Infringed Work.

78. APM is further entitled to recover up to $150,000 per Infringed Work from ZEE's vicarious copyright infringement pursuant to 17 U.S.C. § 504(c).

79. Pursuant to 17 U.S.C. § 505, APM is further entitled to recover from ZEE the reasonable attorneys' fees and legal costs incurred as a result of ZEE's acts of vicarious copyright infringement.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against all Defendants)

80. APM incorporates the allegations set forth in all Paragraphs of this Complaint as if fully set forth herein.

81. On information and belief, Defendants knowingly and systematically induced, caused, materially contributed to, had reason to know of and participated in, the infringement of APM's exclusive rights in the Infringed Works under 17 U.S.C. § 106 by the unauthorized U.S. reproduction, distribution, public performance, importation, U.S. synchronization, and/or display, or U.S. licensing thereof, of the Infringed Works by Defendants' affiliates, subsidiaries, and/or parent companies in video content located on websites, applications, and/or television broadcast channels owned or controlled by such affiliates, subsidiaries, and/or parent companies, and on YouTube (www.youtube.com), the Zee5 App, Zee5 Website, and Zee Social Media Channels for access in the United States.

82. Defendants' affiliates, subsidiaries, and/or parent companies used APM's Infringed Works, without authorization or license, to in the Infringed Works, including to promote, expand and sell their various media and entertainment goods and services.

83. At no time did Defendants, their affiliates, subsidiaries, and/or parent companies receive authorization or permission to reproduce, synchronize, distribute, and/or perform by means of digital transmission any of APM's Infringed Works.

84. Said use, encouragement, provision and benefit continued well after APM provided detailed notice of infringement and Defendants had every right, ability and means of control to remove the Infringing Works and cease further infringement.

85.     On information and belief, through their actions and/or inaction, Defendants knowingly induced, caused or materially contributed to copyright infringement by each other and each must be held liable as a contributory infringer.

86.     APM is further entitled to recover up to $150,000 per work from Defendants' acts of copyright infringement pursuant to 17 U.S.C. § 504(c).

87.     Pursuant to 17 U.S.C. § 505, APM is further entitled to recover from Defendants the reasonable attorneys' fees and legal costs incurred as a result of Defendants' acts of contributory copyright infringement.

## PRAYER

**WHEREFORE**, APM prays for judgment and relief as follows:

A.      For judgment in favor of APM and against Defendants;

B.      A declaration and finding that Defendants infringed APM's Copyrights in violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*;

C.      A declaration and finding that Defendants have contributorily infringed FPM's Copyrights in violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*;

D.      A declaration and finding that ZEE has vicariously infringed APM's Infringed Works pursuant to the Copyright Act of 1976, as amended 17 U.S.C. § 101, *et seq.*;

E.      An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the disgorgement of Defendants' profits in an amount to be proven at trial, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c) in an amount up to $150,000.00 per infringed work;

F.      For costs of suit, including an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and other applicable laws;

G. Order that Defendants be required to pay APM pre-judgment and post-judgment interest at the statutory rate;

H. For temporary, preliminary and permanent injunctive relief requiring the removal and destruction of the Infringed Works and any other works using APM copyrighted materials; and

I. For such other relief that the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), APM demands a trial by jury on all issues in its Complaint so triable.

Dated: October 17, 2025

Respectfully submitted,

By: /s/ *Ben L. Wagner*

Ben L. Wagner (243594)
Jared D. Bissell (272687)
TROUTMAN PEPPER LOCKE LLP
11682 El Camino Real Suite 400
San Diego, CA 92130-2092
Tel: 858.509.6000
Ben.wagner@troutman.com

Attorneys for Plaintiff
ASSOCIATED PRODUCTION MUSIC, LLC